v. Gary Schmidt and the Beacon Insurance Company. On behalf of the Avalon, Mr. Scott L. Howey. On behalf of the Avalon, Mr. Devin C. Moose. Mr. Howey, you may proceed. We have two appellants, correct? We do. Are you dividing time or are you taking a lead on this? I will take a lead, Your Honor, and intend to speak for both defendants, or both, all defendants for the most part. Mr. Carlson also represents the Schmidts and has asked that I leave him a moment or two if he feels it necessary to speak on behalf of his client specifically. Okay, so you want to keep him by a minute or so? Just a moment, a minute or two I think would be sufficient. Thank you. You may proceed. Good morning, and may it please the Court. I am Scott Howey and I represent the defendant at the length in this matter, the Beacon Insurance Company. This appeal, which we are here for, of course, for the second time, concerns a series this time of certified questions regarding spoliation. Generally, whether the plaintiffs had a relationship with any of the defendants so as to give rise to a possible duty that obligated the defendants to preserve the fire-damaged home. More specifically, the certified questions concern this Court's previous decision reversing the summary judgment for the defendants on the ground that there were questions of fact regarding such a duty. Particularly, as to whether complaints about the home's electrical system were the functional equivalent, as this Court called it, of a request to preserve the home as evidence because they served as notice of potential litigation. At issue in the certified questions is whether that result survived the Supreme Court's rejection of two of its principal pillars in Martin v. Keeley and Sons. Let me ask you a threshold question. In Martin, did the Supreme Court specifically rule on the issue of whether or not complaints, a series of complaints, could be the functional equivalent of a request to preserve? Did they confront that specific issue? That specific issue, no. It did not address that specific question. What the Court did, however, was find that the function that this Court found to be the equivalent of a request to preserve evidence was a function that was not relevant to the question of spoliation. And that was the function of the potential litigant function, the notice of potential litigation. The Court found in that case that there was no question in that situation that the defendants in that case had notice of potential litigation concerning the I-beam that was the evidence at issue there, but found it didn't matter because the question of being potential litigants was not relevant to the spoliation inquiry. I think we'd have to agree. Martin removed that as a basis. Martin, I think, very clearly removes that as a basis and very clearly states that the source of that holding, which was not limited to this Court, had come from the Shimanovsky decision that the Supreme Court had issued sometime earlier regarding discovery sanctions. And it held specifically in Martin that the principles that concerned potential litigation as it related to the discovery sanctions in a case already pending were not relevant to establishing the predicate duty in the context of a spoliation case. So Martin recognizes possession, control, and, what I would phrase, something more. Martin clearly states... So what's the something more? And why couldn't the complaints be the something more? Well, Martin actually provides two examples of something more. It gives two somethings, if you will. And it reiterates the principle that something more than just possession and control of the evidence is necessary to create the special circumstances that lead to a duty, but not just anything more. It rejected the notion that being a potential litigant is significant and instead set forth two examples of something more that might be relevant to a special relationship. It drew them from its 2004 decision in Dardeen v. Keeling, where the Supreme Court stated, It is clear from the context of the Dardeen decision, and this is Martin speaking about the Dardeen decision, that something more than possession and control is required, such as a request by the plaintiff to preserve the evidence and or the defendant's segregation of the evidence for the plaintiff's benefit. How do these examples affect the relationship? Well, even before the Supreme Court decided Martin, this Court addressed that question in the previous decision in this case. This Court noted commonalities between those two examples of something more and observed first that they seem initially to be more properly directed to the question of voluntary undertaking. But it went on to suggest a feature that's common to both of them that does contain a legal standard for special circumstances that can govern this case. And this Court wrote, As it relates to the relationship prong, such conduct could perhaps speak to some element of reliance between the parties that is not present in this case. So it is the question of reliance and how those two examples the Supreme Court has put forth, not just in Martin, but even in decisions prior to that, how they relate to reliance. It's that element of reliance that characterizes the sort of special relationship that can give rise to a duty. So couldn't the complaint serve a complaint, serve that purpose that establishes that reliance? A complaint would not establish reliance because it doesn't speak to the evidence specifically. Certainly not the complaint in this case doesn't speak to, doesn't give any indication that the plaintiff is relying upon the defendant to preserve the evidence. Certainly not in the same way that when a plaintiff asks a defendant to preserve the evidence. Well, does it have to be, I mean, the Supreme Court said it doesn't have to be a request to preserve. Maybe it's some sort of notification that this evidence is important. It isn't. And so isn't that, couldn't that be the purpose of the complaint? It has to be. And I'm relying on you to, well, I don't know. I don't know if we finished to say, well, we're not going to finish that. Okay. Well, but it would, I can finish it, Your Honor, I think. It would require some statement of reliance. And that's, I'm using the terms that this Court used in its previous decision, that element of reliance. It has to demonstrate some element of reliance on the part of the plaintiff relying on the defendant to, not just to state the importance of the evidence, but to rely upon its preservation. And that's a key distinction, I think. What about the magic words? The law disfavors magic words, and obviously you're familiar with that phrase. So, you know, the magic word would be, we request that you preserve the evidence. The Court has said if somebody gets fired, you don't have to use the magic words. You are fired from this chat. So how does that square with the magic words? Does this favor the magic words? I request that you preserve. Well, I think the magic words in this case, if I might use that magic phrase, would be, is the element of reliance. And that doesn't necessarily need to be something, a specific request. I request that you preserve the evidence. Certainly that would suffice. The alternative that the Supreme Court has provided several times is the actual preservation, the setting aside or segregation of the evidence by the defendant. That is something else that would suffice. But in terms of what the plaintiff might do, some statement that there is reliance happening, that statement could potentially be in a formal, a legal complaint in that sense of the word complaint. What we had at issue here are not complaints. And what this Court found to be the functional equivalent last time, before the Supreme Court decided Martin, was not legal complaints, but just grievances, complaints about the … The functioning of the equipment. The functioning of the electrical system in the home. And there's nothing about those statements to give an indication to any of the defendants in this case that the plaintiff was relying or counting on the defendants to preserve that evidence. Didn't they indicate that the plaintiff might have some interest in those items in the electrical system? And that if that were destroyed, then that would somehow harm the plaintiff? And if so, would that be enough? That would not be enough in this case, Your Honor. So that requires some additional inference, a leap of logic that would require the defendant to know that the plaintiff is counting on them to preserve that evidence. There are ways to do that, other than a formal letter requesting the preservation. A good example is the recent First District decision in the… Kullberg, is it? Kullberg. Kullberg is the name of the case, involving a taxi cab. Right. That's a case where there was a… The First District, and this is since Martin was decided, found that the complaint, the formal filed legal complaint about the taxi cab was enough to provide notice of reliance. They didn't use the term reliance the way this court did. But that's the sort of thing that it was finding there. It also found a specific request, a letter request, asking the defendant to preserve the taxi cab. It also looked to a protective order that the circuit court had issued in that case at the request of the plaintiff. You're talking about some legal procedures that are fairly sophisticated, but take it in the real world. You have a lay person who doesn't know anything about the implications of magic words about the request to preserve. How would they be able to avail themselves and preserve the evidence when they don't know anything about this? Well, it's one thing to keep in mind about the Kullberg case, first of all, is that the entire scope of the actions that the court found to be sufficient happened within about four days of the taxi cab accident. So while there might be a certain amount of sophistication involved, it's not the sort of sophistication that was beyond the capability of the plaintiff in that case. Did Kullberg talk about Brobey, which is another First District case? I know you've argued in the brief that Martin effectively overruled Brobey, but did Kullberg discuss Brobey? I don't recall if Kullberg discussed Brobey. And I think it's also important to recognize that Brobey contained a number of different independent grounds for a duty in that case, not all of which I think were overruled by Martin. Martin certainly did overrule the potential litigant aspect. But didn't Brobey hang its head also on the complaint that was made about the van? It did, but it based that upon the fact, it reached the same reasoning this Court did, that the complaints put the defendant on notice of potential litigation. It specifically used the phrase potential litigants. It cited Szymanowski as the basis for that finding. And so that aspect of Brobey simply can't survive the reasoning of Martin. There are other aspects of it, including the fact that a specific request was made. Other aspects that might still survive and make that ruling supportable under the current law, but the potential litigants aspect of Brobey no longer survives. Kullberg was a case where it's also important to recognize that there was a duty found in that case, but only after the certain things had happened. And there was a gap of time, not very long because it all happened very quickly, but not very long, a period of time where there was no duty to preserve the evidence yet, because there had been no complaint made, no, and more importantly, no request made for the preservation of the evidence, no protective order even requested. So the notion of a protective order is something that would be sufficient to state the plaintiff's reliance without actually being a formal request of the defendant. It's similar in some ways, but it's a, more importantly, it's similar because it states that the plaintiff is relying upon the defendant to preserve that evidence. But that's already in the middle of litigation that that happens, correct? It was in Kullberg. It need not necessarily be, and there's certainly, it's not uncommon to hear of cases in which even before a case is filed, a potential plaintiff will go to court and ask for the preservation of some evidence because of the fact that it may very well be destroyed soon. So is there a position that no complaint as a matter of law, regardless of what it contains and how it's communicated, could ever serve the purpose of a request to be preserved? If we're speaking about complaint in the sense of a grievance about a piece of equipment like the complaints at issue here, not a legal complaint, that would simply not be enough to state the reliance on the defendant to preserve the evidence, right? The statement that there's something wrong with the electrical system is not the functional equivalent for spoliation purposes of requesting the plaintiff, requesting the defendant to preserve it. It's not the functional equivalent of stating that the plaintiff is relying upon or counting upon the defendant to preserve that evidence. Something short of an actual request that might still be sufficient would be simply a statement of reliance, an open statement that I, the plaintiff, am expecting that you, the defendant, will keep this electrical system or this taxi cab or these x-rays safe from destruction. Something perhaps in the nature of or akin to a contractual understanding that I am counting on this to happen, and I as in the role of the plaintiff, something that is sufficient to invoke affirmative measures on the defendant's part to overcome such things as the sheer institutional inertia by which documents are often routinely destroyed, or random chance as in the case of the x-rays that were accidentally disposed of by cleaning personnel in the Miller Supreme Court decision. Something like competing concerns such as the need to dispose of a totaled minivan as in the Broby case, or the need to demolish an unsafe structure as in this case. There are competing concerns that call for the destruction of those pieces of evidence. And there was nothing, certainly in this case, to forestall that from happening. No statement by the plaintiff of reliance, the sort of reliance this Court spoke of in its previous decision as being the common factor between the Supreme Court's examples of plaintiff's request to preserve the evidence or the defendant's segregation of the evidence. I'd be happy to address any other questions that the Court might have. I would also let the Court leave. I ask permission for Mr. Carlson to speak briefly. Give Mr. Carlson a minute. In the event of no other questions, I would simply ask the Court to address the certified questions accordingly. Thank you. You have time for about a minute. Thank you. Mr. Carlson, you may proceed for about a minute or so. Good morning. I'm Eric Carlson, and I represent the defendants, Gary and Cynthia Schmidt. I think the question here that you've been focusing on most is what sort of ñ what is needed by the relationship prong to create this duty? In Boyd, they specify certain relationships that do create the duty to preserve evidence. They're a contract, they're an agreement, they're a statute, voluntary undertaking. All of these relationships are either contractual or quasi-contractual. They create some sort of expectations on the parties. He used the word reliance. I think that's really what the focus has to be on here. What does the plaintiff expect to happen? What does the defendant believe that is expected of him? In this case, the only complaints that we have that the Schmidts were privy to were complaints made more than a year before the fire occurred of lights flickering and fuses blowing. That does not put any expectations on the Schmidts as to what they should possibly be looking to preserve. They've never been asked to preserve anything. I think that's really the distinction here between a complaint and a specific request, is a specific request puts both parties on notice of what their expectations are from the person requesting it and what expectations are being put on the person who's receiving the request. A complaint simply does not do that, particularly a complaint that is so vague and so distant in time, and to a layperson such as the Schmidts would not put them on any sort of notice that there might be an electrical problem that could cause a fire. So your position isn't that no complaint could ever do it. Your position is that complaints in this case didn't do it. Well, I think that we don't even need to get to the broader question of whether any complaint could do it, because we're looking at the facts in this case, and that's really what we need to focus on here. Could we imagine a complaint that could do it? I don't know, maybe. Maybe they could be close enough in time, could be requested in a certain way that would put people on notice, but we have to look at what are the reasonable expectations. You know, you mentioned magic words. I don't think there are any magic words here, but you have to look at what the words actually are, what expectations are being shown by what words are used. Something as obvious as I request that this evidence be preserved is quite obvious about what you're expecting. Saying that I'm having some problems with, you know, fuses blowing out when you turn on the air conditioner doesn't put anybody on notice, either the plaintiff or the defendant on notice, that there might be a future request to preserve evidence. And Martin didn't close the door to all complaints, but you're saying certainly to the ones here. To the ones here, I don't see how there can be any functional equivalent between those complaints and requests. And keep in mind that the law under Anderson is that a request on its own is not enough. There has to be some sort of affirmative action on the other side. There has to be some sort of conduct that allows one or both of the parties to know that, yes, I am going to respond to that. You know, maybe the contract isn't quite fulfilled. Maybe there's been essentially an offer, will you please request this evidence. There hasn't quite been acceptance. He's never called back to say, yes, I'll request the evidence. But he's segregated it and put it aside. And the contract is intended to be formed by both sides, but we haven't quite got to that point. Perhaps that's what the special circumstances can be. What was the holding of Anderson? Wasn't it that regarding, didn't Anderson actually hold a request to preserve in and of themselves are not sufficient? That's correct. So did Martin overrule Anderson? I don't believe so. Martin didn't hold that. Martin held that the request to preserve would be sufficient, obviously, right? Well, it held that there was a statement. Honestly, it wasn't a holding based upon the facts of that case. It was just a statement that said that something more than possession controls such as a request and or segregation. And it cited back then to Miller. But that's not really consistent with Anderson's holding, is it? I believe it is completely consistent with Anderson. It's not overruling that. It's not holding that that is not sufficient. It's just essentially restating the law that was set in Miller at that point. Anderson didn't hold possession control, didn't even talk about possession control, simply talked about the. . . Well, actually, possession control was mentioned. It wasn't mentioned in the discussion there. Right. But there was evidence of possession control that is in record in the Anderson case. Right, but the holding was that simply requesting wasn't enough. Correct. That holding didn't have possession control in it. It wasn't expressly discussed in that part of the decision. Are there any further questions of Jeffrey? There is. Thank you, Counselor. Thank you. Mr. Bruce, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, Devin Bruce on behalf of the plaintiff. Real quickly on Anderson, that is completely distinguishable from the facts that are before the Court here. Number one, the plaintiff there did inspect the truck and hose assembly at issue. And number two, and importantly, the defendant in that case gave actual notice in writing to the plaintiff that that truck and that hose service was going to be back in service. Completely distinguishable from the facts here. I think the issue that was raised by the Court in these questions that we received, excellent points. And I think the issue goes to looking at Szymanowski and looking at the Martin decision and asking that question which you asked, which is, how is it that the analysis in Szymanowski is not pertinent to the issue of spoliation but the issue of request for preservation of evidence is? So let's look at Szymanowski and let's look at what Martin said. And I think the answer is, and Justice Zinoff, you alluded to it in one of your questions, I'm submitting to this Court, and I have some analysis and I'd like to submit it. I'm submitting to this Court, and I've already put it in my brief, that if the entity, not the potential litigant, the entity has actual knowledge that that's either important or needed for future litigation, what Martin tells us is, in a spoliation action, that's where the duty is triggered. That's where I'm going to submit to the Court, and I have a basis for doing so. Now, if you look at Szymanowski, Szymanowski's, the crux of Szymanowski has to do with 219C sanctions and making sure that potential litigants, a wrongdoer, right? A wrongdoer doesn't go and scuttle the evidence because they're going to get sued, right? That's what pre-suit evaluation, that's the crux of that. And the whole discussion has to do with the entity being a potential litigant, okay? Now, the trial court and I, in this case, have had many disagreements. I don't think we agreed on much of anything, the trial court and I. But one thing that the trial court pointed out, and which I think the defense pointed out, but certainly the trial court is, that Pekin wasn't a potential litigant in this case until after they destroyed the evidence. If you look at Martin, if you look at Martin, keep in mind we have these two prongs in void. In the first prong of Martin, in the first prong of Boyd, which is this relationship prong, it does, Martin repeatedly talks about the knowledge of the would-be defendant. And there are multiple instances, and I think that's very important for my analysis. Knowledge of what, though? That's exactly the point. So keep in mind the whole Martin decision is not that long. It talks about the first prong, where does the duty get triggered and not triggered. In three different instances that I found, Martin is referring to the knowledge of the defendant about the importance of the evidence and whether it's going to be used for future litigation in the prong one discussion. In the prong one discussion. For example, it talks about in the prong one discussion about Boyd knowing the defense, knew the heater was evidence relevant to future litigation. Okay? That's one instance. I think it's very telling, Martin's reliance on Jackson v. Michael Reese Hospital. And if you'll bear with me, I'm going to tell you some more about why I think that case is especially important. But the Martin decision especially says in finding under prong one that they were able to go back down and replete a cause of action for duty under spoliation, and I quote, knowing the exploits were material to future litigation. You'll recall the Jackson case, which is repeatedly relied upon in Martin, talks about the internal procedures of the hospital, which I'm making, that's the 800-pound rule here. Let's just be honest. The PECAN had actual knowledge, and I've got overwhelming evidence from their experts, from their inspection of this scene, from the articles that they taught their employees. They knew at the time of this occurrence, they had actual knowledge that they should not destroy this fire scene, unprovided, uncontradicted. They knew that this should not be destroyed. And you say, and the rhetoric by the defense, and I can, I'm a friend, says, well, you can't look at internal practices and procedures. But that's what Martin did. That's what Martin did when it's talking about Jackson. Jackson says they looked at the hospital's retention of medical records beyond the statutory time period. They said, look, the hospital goes beyond the statutory time period in order to preserve medical records. And they go on more. They say, and I quote, the hospital's agreement to follow an accreditation manual regarding medical schools. They're looking, Martin's looking, in the Jackson case and citing this favorably and saying, look at these internal procedures, look at the knowledge of the hospital in Jackson, and they're using that to say we're going to send this back down and they can reclaim the cause of the appellate court. So you're moving very fast and you're covering a lot of areas. And I understand this is obviously a very important case. But let me ask you this. Defense counsel put it this way. Does every time somebody who is a tenant complained to the landlord that their lights are flickering and the fuse goes out when they put on the air conditioning, is that the functional equivalent of a request to preserve evidence? I would say it's that, yes. And I would also say it's the same. Why would it be? What is it telling them? It's telling them that the lights are flickering. It's telling them that when three people burn alive, that fire scene evidence is going to be important for fusing the cause of the fire. We're not talking about after the fact. We're talking about what does that convey at the time that's relevant to any of the prongs when you say that the lights flicker when the air conditioning goes out? That's his question. With respect to Justice, it's more than that. It's the complaints before and afterwards. Right. I mean, she complained. Mrs. Combs complained. We have over a decade of complaints beforehand with the tenants, both the Andersons who both testified. About the functioning of the electrical equipment. Absolutely. Evidence is, you know, I'm not going to say it's unproven. They deny it. But I would say there's multiple occurrence and eyewitnesses that said that they complained to the Combs, all of which Pete can do about before they destroy the house. Let's assume all of that is true. Let's assume all of that is true. So your position has to be that complaints about the functioning of equipment would always be the equivalent of request to preserve an exfoliation case. Before and after a tragedy. I think the after is also key here. Before and after the tragedy. She complained afterwards to the fire department, to which the defendants had actual knowledge. She complained about electrical problems. She complained about fuses. But we build on to that. I don't want the defendants or anyone to be construing my argument that I'm just here on the request to preserve evidence. I believe that, well, first of all, if you want to look at it quite candidly, there's all kinds of requests here. And you say, well, where are the requests, Devin? The requests are within Pekin's own policies and procedures. Again, I'm relying upon Martin in the Jackson analysis. Pekin repeatedly made requests of its staff and its investigators, repeatedly made requests that you don't destroy evidence of a fire scene until everyone's notified. They sent out form letters to everyone inexplicably except Mrs. Combs, and they admit that they knew where she was at. Those are the requests. And so what I'm saying, Justice, is yes, I believe those complaints before and afterwards are tantamount to a request to preserve the evidence. But we have something here that's coming. Don't all insurance companies probably have those policies? Well, they should. I'm just saying if we're talking about what the Supreme Court appears to be going down the path of a narrow exception to the general rule that there's no duty to preserve, you are opening up a gaping hole in that general rule if you're saying that every insurance company that has a policy regarding preservation of evidence, regardless of whether a plaintiff asks for it or not, that they have to preserve that evidence and there's a duty on them to preserve that evidence under board. I would suggest in fire scene issues, yes, because there's nationally recognized standards. So just fire scenes, not other types of catastrophes. Bridges collapsing. The Martin case itself, a beam collapses. People are hurt. Yeah. So the insurance company, they have a duty to preserve their evidence? I didn't mean to interrupt you, Justice. There's no evidence in the Martin case. It was very narrow what the plaintiff was alleged there under special circumstances. It was exclusively possession and control. It was potential litigants. And the third thing was Keeley's employer. Those were the only three things the plaintiff there in Martin v. Keeley alleged. I'm alleging all of this actual knowledge on the part of Pekin, and I'm alleging the issue of their own claims adjuster finding that there was a probable cause of this fire, which was electrical in nature, before they destroyed it. And all of these internal procedures. I mean, I'm saying, Justice, it's not just a request to preserve evidence. Keep in mind what the admonishment from the court in Martin is. It's possession and control and something more. Something more. I'm saying the something more here is not only all of these complaints before and after. The something more here is all of the knowledge of Pekin. They do not want me to talk about that in any way, shape, or form. They do not want to have me tell you that their own experts testified that this should have been preserved. In this case, that's what they testified to. It's all in the record from before, right? It's not just using that testimony about industry standards. It's far beyond that. It's what they knew in this case. This case, every case has got factually specific instances. And I think it's important to understand, if there's nothing else that I'm conveying to you, is we've got internal memoranda, articles that say that fire scene evidence should not be destroyed without notifying all potential people, all potential parties. We have national standards. And we've got them saying, their own claims, Justice, that the probable cause of this fire was electrical in nature. And what about a case of a fire and there's no complaints, pre-existing complaints, whatsoever by the plaintiffs? So are you saying then, because of these national standards and this discovery afterwards, the knowledge that the fire scene should be preserved would impose a duty, even if the plaintiffs had never said anything to the defendant? It's a different fact. I don't know, Justice. You keep emphasizing that the insurance company knew later. Well, it's two things that I'm emphasizing. I'm talking about their internal policies and procedures, which Martin said was something that we can look at, one. And, two, I'm looking at, in this particular case, what they found out. Well, the fire department said that the possible, most likely cause or possible, I'm paraphrasing, cause of the fire was electrical in nature as well as the probable cause of the insurance gesture. But real quickly, let me. If we're saying that there must be something specific that places a defendant on clear notice that a plaintiff is relying on the defendant to maintain this evidence, let's assume for a minute that we decide that these complaints are not the functional equivalent anymore under Martin. So we're basically saying the complaints, because, again, we relied on some other things that Martin kind of threw out, but let's just say the complaints are now out the window. We go back to Justice Hudson's question. Are these procedures from the insurance company something specific that places the defendant on clear notice that a plaintiff is relying on them to keep the house? I would say yes, and I would also say this issue of reliance is what they're saying. I'm not agreeing with the issue of reliance. I'm not saying that you have to go that far. I didn't see anywhere the word of reliance or expectation in the Martin decision at all. We're trying to make sense out of what the Supreme Court over the years has conflated all of these concepts. I understand. It's like a bowl of spaghetti. So you're trying to make sense out of what is this actually something more. Again, if you segregate the evidence for the benefit of the plaintiff, then that's a voluntary undertaking. So we're in a different area. We're not in any special circumstances, presumably, or arguably. We're looking right now at the request. We said earlier this was a functional equivalent of a request. So we have an issue of, first of all, did they have exclusive possession and control, and was there a request? Okay, let's say that what does this request in the Supreme Court's mind have to do with all this? What's the relation? The answer to the question is what the Supreme Court, I suggest to you, and if you look at the Martin decision, it repeatedly talks about, admittedly, the voluntary undertaking, but I think it's important. They're talking about what knowledge that entity had of the importance of that object. So this sounds like potential litigation to me. Well, and Justice, you're bringing up a good point. I didn't write the opinion. No, no, I'm not being critical of the Supreme Court. I'm just saying, look, we have all kinds of times we have overlapping factors. Look, it says, and this is in the first prong analysis. This is from Martin, and it's referencing what the defendants knew about the importance of the I-beam. It says, as evidence, or even acknowledge the significance of the I-beam as evidence in potential future litigation. So Kilberg is wrong when it made that holding that the knowledge of the defendant is really immaterial. I'm going by what the Supreme Court is saying. I'm just saying, is Kilberg wrong? Absolutely. I think the issue, I mean, that case is fully factually distinguishable from the facts we have here. I mean, you know, it's in litigation. But there is a holding in there that says that basically if a defendant has knowledge that there's some problem with this, that doesn't create a duty in and of itself. But I would say that the Keeley decision would disagree with that. I'm very much relying upon Martin v. Keeley when they're talking about the first prong, admittedly involuntary undertaking, but they're talking about what the defendants knew about the object, which is exactly what you asked, Justice, which gets to my point. I mean, to construe the question, let's put it kind of differently, conversely. To construe the question of what is the importance of the request to preserve evidence, if you just take their interpretation, I mean, what's the difference between Mrs. Cohn's calling on the phone and saying, I want this preserved by a layperson that knows nothing whose family just burned alive in a fire, right, versus Pekin's already inherent knowledge that in this particular fact, and I'm not saying in every insurance claim, Justice. I'm not being that broad. I'm saying in this fire scene, and I'm not just talking about industry standards, and I'm not even talking about their own policies and procedures. I'm talking about what they learned in this fire investigation. They sent a whole team of people in there, which she was denied the complete opportunity to do, complete opportunity. And that hasn't been addressed yet today. Again, but in terms of the inspection and the opportunity, I mean, your question was, in terms of complaints, was that addressed by Martin? No, it wasn't. And the question is whether the opportunity, the plaintiff didn't raise that issue. It wasn't discussed. They talked about the opportunity to request evidence. And, Martin, I'm just accurately reading the opinion. So are you saying the obligation, in some of your words, to preserve could be triggered by something totally unconnected to any complaints by the plaintiffs? I think that is in addition to. That's the something more. In none of these foliation cases do you have the evidence that we have here. I mean, they can't cite to any case that they're relying upon where the defendants, in essence, are acknowledging we know this evidence should be preserved. Generally, in fire scene evidence and in this particular case. Because of their investigation. Because of their investigation. I'm sorry. In addition to all of their policies and procedures. I mean, that's the 800-pound grill in this room. And I understand. Their only retort to that is don't look at that to impose a duty. But that's what Martin did when they're citing Jackson. That's what they did. I would bristle real quickly just in response and conclusion, if I may. You know, the reliance issue is theirs. I agree with you, Justice Hudson, about the layperson issue. And in response to Mr. Carlson's, I don't want to get into that. I don't know that we're here today to debate the evidence. But I would dispute the issue that there was just one complaint in the very last part. There were years of complaints. And then complaints afterwards that were conveyed to the defense. If you have no more questions. Thank you so much. Mr. Howard? Maybe we can address this industry standards issue right off the bat. Certainly, Your Honor. This Court has already rejected the industry standards or the internal procedures of Pekin as being any basis for a duty. And it's looked to case law that not only applies to spoliation but to any negligence aspect. It's not the specific knowledge that they had in connection with the investigation that they did. And that is where I was going to begin, Your Honor, with correcting what Mr. Bruce just said about this knowledge that Pekin supposedly had regarding the need to preserve the evidence coming, as he said, from the investigation. That is simply not correct. There is nothing in this record to suggest that Pekin knew, based on his investigation, that it was supposed to be preserving the evidence. Well, but what did they know? What they knew was that there had been some complaints about the electrical system, that those complaints had been made prior to the fire happening. I believe it's possible that they may have been aware that those complaints had been reiterated after the fire took place. But what there wasn't, and it's crucial to recognize that anything that Pekin, any impression it had about whether evidence as a general rule in fire cases ought to be preserved, did not come from the specifics of this fire or this investigation. But it said, I mean, there are reports that can't rule out electrical for the fire, correct? That's correct. It knew that electrical was a possibility. It had conducted an investigation. The fire department had conducted an independent investigation. What it didn't have, it may have had some indication that there was an electrical role in this fire. What it didn't have was a statement of reliance by the plaintiff, no indicia that the plaintiff was counting on Pekin to preserve this evidence. So you're disagreeing with him. You're saying that the plaintiff's, some affirmative action on the plaintiff is necessary to trigger this duty. There has to be something, it's typically going to be an affirmative action by the plaintiff. It's some indication, it might come from some other source, that the plaintiff is counting on the defendant to preserve the evidence. That's voluntary undertaking, isn't it? Some affirmative action, but that's not necessarily special circumstances. If I might, Your Honor, the affirmative action by the defendant would be a voluntary undertaking. Or, in this case, and I agree with the Court's previous decision to the extent that the voluntary, that the segregation of the evidence seems like a voluntary undertaking. The Supreme Court has categorized it as one of the special circumstances, separate from voluntary undertaking. And that appears to be based on, and I agree with this Court as well from its previous decision, that appears to be an indicia of reliance. Some element of reliance by the plaintiff. Either because the plaintiff has requested the preservation of the evidence or because the defendant has taken it upon itself to do it in its own volition. But in either case, there is some element of reliance. We have the industry standards and, more importantly, Pekin's procedures in place. Don't they recognize the reliance? Don't they recognize that the people, that someone, whether it's the plaintiff or someone, will be relying on us to keep this evidence until we notify everybody that we're going to destroy it? That is still not a statement of reliance. And it's also something that this Court has previously... Why would Pekin have a rule that says, before we bulldoze this house that we theoretically own right now, we have to tell people such as, you know, Regers? Because that's a, it's a statement of procedure of something that the company needs to do only for the purpose of notifying all the interested parties that this is to happen. Why would you have that procedure? Simply to allow them to conduct an investigation. Right, because they do. But it's not a statement... It's not a recognition that they would, these people, in most circumstances, would be relying on you to hold it until you notify and you're going to destroy it. It is a recognition, perhaps, of the possibility of a reliance. It is not specific to this case or any particular fire investigation that a particular plaintiff is relying upon it. And it's important to recognize, too, and the Court just mentioned during Mr. Bruce's argument, that Illinois doesn't generally recognize a duty to preserve evidence. It's only in specific circumstances that are defined by law where such a duty does arise. Specific circumstances like contracts or agreements or voluntary undertakings or the special circumstances that this Court has recognized must involve some element of reliance. Not the very possibility that there might be an injured party who's relied, but a specific instance of reliance in this case. Either evidence by a specific request to preserve the evidence, or by the preservation of the evidence of the defendant's own volition, or by something else that clearly communicates that this party, this plaintiff, is relying upon this party, this defendant, to preserve that evidence. Mr. Bruce ignores the aspects of Martin that rejects reliance upon Szymanowski as the basis for the potential litigant basis for a duty to preserve evidence. If I might take just a moment to conclude, Your Honor. It is important to recognize that because Illinois does not generally recognize a duty to preserve evidence, the circumstances in which such a duty arises are extremely limited. The Supreme Court has only identified two specific examples, those of the actual request to preserve the evidence, or the actual segregation of the evidence by a defendant. And there's nothing in this case that approaches either of those examples or resembles them in any way. Without any basis for a special circumstance in this case, there is no duty to preserve evidence. And we respectfully request that this Court answer the certified questions accordingly. Thank you, Your Honor. All right. We'll take the case under advisement. We want to thank the attorneys for their arguments. We'll take a short recess.